and David v. Crow, the back door is closed. Ms. Kennedy, and you are sharing with Mr. Churchwell. If you have been around today, you know how poorly that works. You should know. Good afternoon, your honors, and may it please the court. My name is Colleen Kennedy and along with my co-counsel, Mr. David Churchwell, we represent Mr. Jerome David. With the court's permission, we would like to reserve two minutes for rebuttal. Today I will be addressing the First Amendment and my co-counsel will be addressing the Eighth Amendment. As we stated in our reply brief, we believe this court has jurisdiction and on this point we rest on our briefs. As for the First Amendment retaliation claim, this court should reverse and remand the district court's decision, first because the interest of justice exception applies, and second because Mr. David exhausted all available administrative remedies. When you say there's jurisdiction, you're not including exhaustion, it's a jurisdictional issue. Correct, your honor. They are two separate issues that we briefed. Mr. David's failure to specifically address or specifically object to the magistrate judge's report and recommendation is excused because the interest of justice exception applies. Counsel, should we be understanding the exception? Is there an interest of justice exception and also a plain error exception? Are they different? How do you understand this? When a plaintiff fails to specifically object to a magistrate judge's report, the Tenth Circuit typically applies the firm waiver rule. However, when the interest of justice exception applies, they look for whether there's a miscarriage of justice and in order to do so, they apply a plain error standard of review, which is a four-part test. So if we agree with you that there's a plain error here, your contention, if I understand it, is it would satisfy the miscarriage of justice component of the interest of justice exception. That is correct, your honor. Thank you. Mr. David can satisfy all three considerations for the interest of justice exception. First, as a pro se litigant, he exhibited sufficient efforts to comply, including filing an actual objection. This court in Wershing has noted that when plaintiffs fail to object at all, they can still have sufficient efforts. Here, paired with Mr. David's barriers that he faced in order to object in the first place, with the fact that he was able to file an objection, rise to sufficient efforts to comply. Second, Mr. David has an explanation for this failure to object. This court in Orocho v. Lapin looks to the idea of a plausible explanation. When there is a plausible explanation for the failure to object, courts are comfortable with applying the interest of justice exception. Here, Mr. David's plausible explanation for his failure is, first, the lack of adequate law library access, and second, the fact that the district court never got his motion for an extension of time. Why do we have to accept those things? He was able to file a number of other things, was he not? Correct, your honor. Despite not having what he calls access to the library. And why should we believe him that he filed a motion for extension? Two reasons, your honor. First, since this is, there are various standards going on here, but since this is dismissed, the facts should be considered in the light most favorable to Mr. David. Second, in Mr. David's objection that he filed on pages 170 to 183 of the record, Mr. David details his lack of law library access and the fact that the court never got his motion for an extension of time. He talks about how the fund disbursement that. Why do we review that issue the same as we would the sufficiency of the complaint? We review the allegations in the light most favorable to his claim, but this is whether we have, whether we should hear the case essentially, and those things such as the failure to file, we have, we have a docket and didn't appear. And with respect to whether he had adequate access to the library, we have records of his doing a lot of things that would have required the law library. Don't, don't we just address those facts and whether he's established them or not? Yes, your honor, because this case never got to the point of discovery, um, there was never any benefit of looking more into this issue. What we have is in Mr. David's objection, him detailing his adequate law library, inadequate in law library access and his failure to put forth a sufficient legal objection. Counsel, so it seems to me that our law hasn't always been crystal clear on whether the interest of justice exception, uh, and the plain error exception to the firm waiver rule are separate or they're, they're the same. Let's assume that you have a path through the plain error route that doesn't require us to interrogate any of these facts. How do you satisfy plain error here in order to preserve your, uh, challenge on the first amendment retaliation claim? The district, there is plain error here because the district court found that Mr. David failed to exhaust administrative remedies. However, he did properly exhaust administrative remedies. There are two grievances at issue here for the first amendment retaliation claim. These are 2104 and 2110, though the analysis is slightly nuanced. For 2104, Mr. David properly exhausted this grievance by going through all four steps of the grievance process, which is what is required of him under the grievance policies. For 2110, grievances were unavailable to him. So Mr. David's failure to appeal that grievance is excused. This is because prison officials misrepresented to him that jobs are not a grievable issue. The district court noted and opposing counsel conceded that this was in fact a lie and thus excuses Mr. David's failure to exhaust because he was reasonably relying on the misinterpretation that prison officials told him. In the first one, he went through to the fourth step, but then he got a response suggesting something he should do further. Doesn't he have to do that to properly exhaust his remedies? When Mr. David appealed grievance 2104 for the first time, prison officials told him that he was seeking monetary damages in his request to staff, which is part two of the four-part grievance process. They told him that he wasn't able to, he didn't properly align the request to staff remedy he was requesting with what he put in his formal grievance. And they gave him leave to amend his formal grievance to make sure that the requested relief was aligned, in which he did so. And he reapplied, formally filed the grievance again, excuse me, Your Honor, and appealed again. And at that point, the second time Mr. David appealed this grievance 2104, they told him that job replacement is not a grievable issue. So the job replacement related to 10, not 04, right? Sorry for the confusion, Your Honor. In 2104, the second time Mr. David appealed, they responded saying job replacement is not a grievable issue. For 2110, they told Mr. David in response to him filing the grievance that jobs, period, are not a grievable issue. I would like to relinquish the rest of my time to my co-counsel, Your Honor. Your Honors, may it please the Court. My name is David Churchwell, and I am also representing the appellant, Mr. David, in this case. I will be addressing the Eighth Amendment issues here. Mr. David brought Eighth Amendment claims against two defendants, one against defendant Aitson, the dentist, and another against defendant Atkinson, the medical services manager. This Court, we request, should reverse and remand both. I'm going to address each defendant individually, starting with defendant Aitson, the dentist. As to defendant Aitson, delays in scheduling all of the plaque tests necessary for dental treatment for Mr. David were covered by the grievance. In this, for this issue, it's 2103. This is because they're all a part of a continuing course of conduct established by the facility's dental policy. You're essentially saying that grievance can cover future grievable issues? Something, you can file a grievance and that covers something that happens after you file. That's what you're arguing, is it not? Not necessarily that broad, Judge Hartz. Not every time, but that's here because it's a continuing practice. You say you can do that. Do you have any authority for that? Yes, Your Honor. Actually, in the Tenth Circuit case, Howard v. Wade, this Court endorsed that. When was that? It was 2008. It was after this Court in Ross did say the general rule, which is that future conduct cannot obviously, as the Court's words, exhaust future conduct. And what was the future conduct in that case? In Ross, the future conduct, it's unclear from the case in the record and briefing they're in, but the Court does say it was a laundry list of problems. And it did make sure to note that it was stuff that seemingly was unrelated to the initially grieved issue in Ross. In that issue, it was shoulder pain, and the Court there emphasized that it was something unrelated in that instance. Here, the facts are different. We have the initially grieved conduct, which is delays in necessary plaque tests for dental treatment. The other future conduct we're attempting to say that is covered under the grievance is all from that initial nexus. It's delays in other plaque tests tied together because of the dental policy. What was the action that your client wanted the prison to take in response to this grievance? Mr. David, he was seeking restorative care. Generally, reading the grievance with liberal construction, as pro se litigants are offered for exhaustion-related purposes, Mr. David was essentially seeking any type of care that would maintain the teeth, keep his teeth in his mouth. So would your position then require us to conclude that this grievance would essentially preserve his right to seek that same type of relief for anything that happened with his teeth? I wouldn't go that broad, Judge Rossman. I'd say specifically for the teeth in question in this case, we would also cover, in this case it's tooth number 12. There's also, we've briefed tooth number four to be included because the delays, even though it was removed at a future facility, is one that subsequently mere weeks after arriving at the new facility was then removed because of deterioration. It would just be limited to those instances. So is your argument in support of applying the continuing violation theory here sort of dependent on this being a continuing course of treatment? Is that a fair way to look at this? I think in part, it's continuing course of treatment, but also I point this court to the dental policy as well. The plaque tests are necessarily tied together because you have to take, you not only have to take two, but they are temporally connected. And so when you delay the initial one, the subsequent ones are also going to be delayed because of that. Because of the temporal connection, those delays factor into having a continuing course of conduct in addition to the treatment itself. I thought the institution didn't do restorative care. They didn't, you couldn't get a denture or an implant. The doctor said we can remove your tooth. He refused that. So the doctor then gave him pain medication. One other thing I can't remember. Oh, and antibiotics. But if the institution didn't allow restorative care, how can the one doctor, one dentist, or even prison official be liable for not providing that? I wouldn't go so broad to say restorative care generally was impermissible. Under priority three treatment, things like fillings or other types of operations were possible. You are correct that implants specifically were not allowed at the facility, but that doesn't preclude other forms of restorative care. Well, did he request any type of care that would be given? It could be given. I thought he wanted an implant. No? Within the grievance, but he also in that grievance talks about other issues, other issues being just the general pain and tooth pain that he was seeking. He wanted to, quote, keep his teeth in his mouth. Yeah, that was the problem. He wanted to keep his tooth, and the doctor said I can't remove, relieve you of the pain and the risk of infection until I take the tooth out. And he didn't want that. So what was the violation there? The ultimate violation is the failure to provide any type of restorative care, separate and distinct from specifically implants. And didn't he have an obligation under the policy to document compliance with an oral hygiene regimen? And he couldn't do that unless he got these two tests. That's correct, Judge Rossman. He was obligated to receive these individual tests. And, in fact, in that grievance, he not only mentions implants, but also specifically talks about the delays in receiving those necessary treatments for any type of restorative care. I'd like to briefly turn to Defendant Atkinson just to assert that Atkinson below for the medical services manager claim didn't attempt to defend any of the district court's rationale or reasoning to support finding no liability, but only raised factual issues. As we laid out on pages 57 and 58 of our opening brief, we believe that there are genuine disputes of material fact that alone support a remand for that claim. How do you show deliberate indifference without showing experience of the problem or some reason why it was obvious to the administrator? That's how we treat suicide and sexual assaults in prison. I see my time is running out. I'd like to briefly answer and then conclude. But it's precisely that second point of showing sufficient obviousness that satisfies the deliberate indifference standard. Judge Hart, we would really prefer to have a lower court actually address that specific claim. We have not had discovery yet, and this would be an issue that would be served much by finding any type of discovery. He's got to allege in his complaint something showing obviousness, does he not? He does. In his complaint, he does assert that there's a ratio of one dentist to 700 inmates. And it's notable that when that one dentist disappears for several months, then it becomes far more difficult to receive any dental care there. What's the ratio of dentists to population in Denver? Do you know? Off the top of my head, no. We tried our best to find general ratios. Unfortunately, those are not published. We respectfully request this court to reverse their reminder. Thank you. May it please the court. Your Honor, my name is Alejandra Brida, and I'm the assistant attorney general for the state of Oklahoma. I represent defendants Ike, Goodwin, Lawson, Purcell, Aitzen, and Atkinson. May I proceed with my argument? Sure. This court should not review plaintiff's retaliation claim under the interest of justice exception to the firm waiver rule. The district court carefully analyzed and considered all three factors to determine whether the interest of justice exception applied and promptly ruled that the exception did not apply here. Isn't the plain error exception its own thing under our precedent? Yes, it is. It is. So let's, I'd like to hear your argument on why the firm waiver rule exception doesn't apply here based on plain error. Why aren't the elements of plain error satisfied? To be more precise about that. Yes, absolutely. I don't see what more you could have done. Yeah, so Your Honor, here at issue, as they argue, they argue that plaintiff properly grieved grievance 21-4 and 21-10. That is simply not true. Could you focus on 04? Yes, absolutely. Okay. The grievance was returned unanswered because the relief requested on the RTS and grievance were inconsistent. And he had not requested any lawful or tangible relief that the reviewing authority could grant him. The inconsistent relief was fixed, right? Your Honor, no. He resubmitted the grievance and still was asking for monetary damages. That's different. He wasn't asking for monetary damages. Before he can bring a 1983 claim, he's got to exhaust his administrative remedies in the prison. So even if the relief he's seeking in the 1983 claim was not available in the grievance system, so how do you do that? If all you are complaining about is you were injured and you want to be compensated for that, you have to bring a grievance, but you're not asking for anything they can give you. So you're saying, therefore, you can't bring the grievance, so therefore you haven't exhausted your grievances, so therefore you can't file under 1983. That doesn't make sense to me. He wasn't requesting any relief whatsoever. He said, I'm filing this because I want to file under 1983, which I think should be understood and would have been by someone experienced in this at all, that he's saying, I'm doing this because I have to do it before I can bring a 1983 claim. Okay, Your Honor. Well, then the answer was that plaintiff was given 10 days to either appeal the grievance to the administrative review authority, and he failed to do so.  Yes. What? It was untimely, or he didn't? He did appeal. You're saying it's appeal of the denial of 04? Well, I apologize. As to 04? 2110. 2110, agreed. Okay. 04, disagreed. Pursuant to, according to section 7 of OB09124, if the plaintiff fails to correct the errors or properly resubmit the grievance, or properly resubmit, the grievance will not be answered and the inmate will have waived slash forfeited the opportunity to proceed in the grievance process. So how is somebody, how is a prisoner who is injured supposed to exhaust administrative remedies before seeking damages under 1983 if he doesn't want, you know, I don't want this guard fired, I don't want this change in your system, I was just abused, and I want relief? It makes no sense to throw it out, throw out the grievance, because he can't get relief from the prison when he really doesn't want relief from the prison, he just wants to exhaust administrative remedies. It makes it impossible for someone in his circumstance to get into court. Okay, Your Honor, but then he needs to make that clear. So obviously, as I stated before, requesting monetary compensation is a non-grievable issue pursuant to our ODOC policy. So he could have made it clear, look, I'm not seeking monetary damages, I'm seeking this. But there was. He did say he wasn't seeking monetary damages, right? No. He said I'm just seeking. Yeah, right. I will. If you just could explain what he should do in this circumstance, maybe that will satisfy, it will be satisfactory. But this isn't your fault. Yeah. I was going to say, yeah. This is something that the way this prison has set up its system. Yeah. Makes it really tough, impossible as far as I can see. Maybe you can help me. No, and I see where you guys are coming from. I think with this, again, our staff go through thousands of grievances, right? So I assume, again, I'm not going to, you know, speak for the individual that obviously the facility had reviewed this grievance. But my guess is they reviewed what he was requesting and they thought, oh, he's seeking monetary damages and that is it. However, I agree with you guys. He did make it clear I'm not seeking monetary damages. So. It sounds like there was an original problem that was legit.  That he didn't have a match between his request to staff remedy and his grievance. Yes. And then he had to fix that. Do you agree that he fixed that? I agree that he fixed that. So then what remains is a grievance that's gone all the way, went all the way through the appellate process within the facility. And as I see it, the only sort of question is whether in the section where he's supposed to say what relief he is asking for that the prison can give him, you're contending that it's as if he didn't even fill that out. Yes. He asked for something that, you know, he couldn't get. So is your position that the reason the grievance is unexhausted is because he didn't answer the question correctly? My position is that, again, there was he action requested state exactly how you believe your request may be handled. That is, what could be done and how. Compensatory, this is his answer verbatim. Compensatory, punitive, and nominal damages through a 1983 civil suit. I am not seeking these damages through the administrative grievance process. Which is, I think, a correct description of the law. Yes, but again, that does not give our staff any direction as to how we can help that inmate. So is it, I think we're getting there, I think, for my questions. Is it your position that because he gave this answer, which is essentially, and I'm not putting words in your mouth, this is just my understanding of your position, essentially a non-answer. It's as though he left it blank. He didn't finish it. Exactly. So when you look at Mark Knudson's response to his grievance, because there was an amended response, right? He basically, in a sense, is stating, look, this is a non-answer. We can't do anything for you because you have not asked us for anything. Okay, so then this is further to Judge Hart's question. What is your view of what he should have done? So what he said we've established is a correct description of the law, but in your view is as good as not saying anything. What should he have said that in your view would have exhausted this grievance? Yes, so let's come back to the meat of the grievance. The meat of 21-4 is that he felt that he was being retaliated against for complaining about the chemicals in his bathroom orderly job. So what he could have stated was, look, no, he could have filed a, you know, let the facility head know, no, I am asking for something. I'm trying to tell you guys I'm being retaliated against, and I, you know, want this to stop, whatever it may be. But, again, it was just a non-answer. He didn't give the facility head anything to do. I mean, there was no relief requested at this point. He didn't want any. He just wanted money. But then we can't give him that, Judge. We, again, pursuant to policy, we can't. And how can he exhaust to satisfy 1983? If he can't, one way to deal with it is say you can't grieve if you're not seeking anything, and all you want to do is sue under 1983. In which case, okay, I've exhausted my remedies. You told me I'm done. Maybe that's the way to deal with it. But if. Your Honor. Let's turn. Okay, okay. Well, 04, he was told, they told him he couldn't grieve. No, are you talking about 010? Did I say 04? Yeah. Yeah, 10. I meant 10, sorry. Do you guys want me to discuss grievance 21-10? We've got other things to pursue, yeah. Okay. So as to grievance 21-10, that was him alleging that defendant Lawson fired him from his kitchen job in retaliation of him submitting a grievance. Plaintiff argues that the administrative grievance process was not available to him because defendants allegedly misrepresented to him that he had fully exhausted his administrative remedies for that grievance. That is false. Defendants did not tell plaintiffs that he had fully exhausted his administrative remedies as to grievance 21-1. Further, plaintiff fails to point to any evidentiary materials in the record to support such. But don't you think telling him that you can't grieve this means to stop the process? Wouldn't any reasonable person, or at least many reasonable people, think I'm done? They told me I can't grieve this. So why go through four steps of a process that I'm not allowed to pursue anyway? Well, Your Honor, that's why we have our process. That's why we have the ODOC appeal process. That's why we have the Administrative Review Authority, because we want to give inmates on an appeal form. They can either click probable error by the reviewing authority, who's the facility head, and let the administrative, the ARA, know, hey, he made a mistake. You know, again, our staff, they're not perfect. They make mistakes. However, he had the opportunity to either point out the mistake to the Administrative Review Authority or to appeal, and he failed to do either. And he did appeal for O4. For O4 he did, but we're discussing 10, right? We are discussing 10.  Isn't one way to read his failure to exhaust intent is that, well, he knew how to do it. Oh, absolutely. Look at O4. Yeah, absolutely. And similar to the plaintiffs in Hoover v. West and Jernigan v. Stuchel, here a plaintiff has not shown any reason why he could have not brought the mistake regarding the previous grievance to the warden's attention or to the ARAs within the 10-day time period. Because he did not even try to cure the deficiency, this court should affirm the district court's dismissal for lack of exhaustion. Can I ask you your position on, your friend on the other side is saying that when we review a grievance, we do it liberally. Kind of like you look at a complaint, a pro se complaint, you give the pro se complaint a liberal, you don't act as the advocate, but you look, the court gives it a liberal construction. Do we do the same thing for a grievance? I would disagree with that. So I think... Based on what authority? So just pursuant to our policy. So pursuant to ODOC policy, grievances have to have certain things. I mean, this, you know, our staff has to know, hey, what is this inmate grieving? Right. So no question about what the policies require. Okay. So the policies are fixed. Yes. When we're assessing whether an inmate's grievance complies with those policies, do we assess that grievance liberally and give it a liberal construction? I mean, I would disagree with that. I think case law is pretty solid on that. But I also think that, you know, inmates need to give prison officials proper notice. They can't just, I mean, it can't be a morass of ambiguous complaints. You know, it's got to be, there's got to be specifics. There's got to be names. There's got to be dates. And that, I mean, they do. They do have to abide by our grievance policy. Let's go to the... The dental care claim. Yes. In particular, the contention of the plaintiff that a grievance about dental care at one point, if it's a continuing problem, if, say, it's the same tooth. Yeah. I disagree with that strongly. But, yeah, I'm more than happy to get into that. Why don't you convince us to agree with that? So, again, plaintiff cites to Shelter v. Christensen, 9th Circuit, 2024, and Howard v. Wade, 10th Circuit, 2008. However, the plaintiffs in Howard and Shelter both submitted multiple complaints and grieved a single continuing harm and or a single course of conduct that prison officials failed to protect them from a specifically identified threat posed by inmates in their housing unit. Shelter and Howard were both being continuously threatened and physically assaulted. Shelter and Howard are not applicable to the case at bar. Nowhere in Grievance 21-3 does plaintiff specifically identify a single continuing harm or single course of conduct by Dr. Adeson. Well, what... Further... Sorry. Can I just finish my thought? No. Okay. Could you say... I mean, you have a lot of thoughts, and I'll forget. Sorry. Yeah, absolutely. So your thought at this point was he didn't identify a single continuing harm or a single course of conduct, but can you characterize what he grieved as a continuing course of conduct? They're not dealing with this problem with my tooth. No. No, he did. So, I mean, verbatim in the grievance, he states... Interestingly, he never even mentions... There's a huge lack of, in my opinion, of specifics in his grievance. It's a morass of ambiguous complaints, no specifics on what denial he's... He wants to get some restorative therapy, some restorative treatment for that tooth. For non-restorable teeth, yeah. Tooth No. 5 and Tooth No. 12, as Dr. Aitzen stated in his dental treatment plan, were decayed to the pulp, therefore non-restorable. There's nothing he can do. I mean, he came into the facility with 12 missing teeth, and two of his teeth were decayed to the pulp, one of those being the one that had to get extracted. I have a question. I mean, a lot of your argument, and I think totally righteously, assumes that inmates need to comply with the prison policy in order to proceed. That's fair. Yep. But the policies also put a burden on the inmate that he can't comply with unless the prison responds. And the dental policy suggests that Priority 3 treatment must be preceded by documented compliance with an oral hygiene regimen. So in order for him to demonstrate that, he needs two plaque tests. Why doesn't this grievance, which prevents him really from complying with this, not constitute enough to exhaust the claim for both tests? I don't agree. One big plaque test. Yeah, I don't agree with that. Okay, why not? No, you're fine. So Plaintiff was transferred to this facility on November 18th of 2020, right? Within days, he was seen by Dr. Aitzen, where Dr. Aitzen did his dental treatment plan. And then within a month, he had his first plaque index test, right? So within a month. And again, we have busy, I mean, yeah, we have scheduling constraints and whatnot, right? But within a month, he had his first plaque index test, which he did not pass, meaning that he was not following the oral regimen that Dr. Aitzen had briefed him on, right? And then he got scheduled another plaque index test, and he failed to show up. They argued that, oh, you know, maybe it wasn't his fault. He failed to show up. It was a no-show. Regardless of why he didn't show up, he did not show up, right? So again, I mean, I guess getting back to the grievance, I don't agree. I mean, this court has previously held and established that a grievance obviously cannot exhaust administrative remedies for claims based on events that have not yet occurred. And I don't believe that he did grieve a single continuing harm or a single course of conduct. Absolutely. Yeah, in Barnes v. Alred, which is 2012. I'm sorry, Your Honors. I'm past my time. I didn't even realize that. We realized it. I'm sorry. Yeah. Very good. Anything further? Thank you, guys. Case submitted. Counselor, excuse me. This was a real pleasure. The students did exceptionally well. You're a live wire. It was fun. Thank you. Court will be adjourned.